**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

FRED L. WILLIAMS                                                                                          PETITIONER
ADC #093355

v.                                           5:19-cv-00345-BRW-JJV

DEXTER PAYNE, Director,
Arkansas Division of Correction                                                                    RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

### I.   INTRODUCTION

Petitioner Fred L. Williams, an inmate at the East Arkansas Regional Unit of the Arkansas Division of Correction, brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus *pro se*. (Doc. No. 2.) Mr. Williams was convicted by a jury in Drew County, Arkansas, of first-degree murder and abuse of a corpse. (Doc. No. 9-2 at 120-22.) He was sentenced as a habitual offender to concurrent terms of life imprisonment and twenty years. (*Id.*) The Arkansas Supreme Court recited the evidence in the case as follows:

> On the morning of April 5, 2013, Tangela Walton accompanied her daughter on a Southeast Arkansas Transportation bus from their home in Warren to her school in Monticello. After signing her daughter into school, Walton returned to the bus for transportation back to her home in Warren. During the trip, the bus driver observed Walton in what appeared to be an argument with someone on her cell phone. Between approximately 8:15 a.m. and 8:20 a.m., the bus dropped Walton off at her home; however, she failed to make arrangements for the return trip to pick up her daughter as she had in the past.
>
> That afternoon, Walton was not at home when her two other children were dropped off after school, and she was unreachable on her cell phone. Upon her being reported to the police as missing, Williams, Walton's on-again, off-again boyfriend, was interviewed by Criminal Investigator Don Hollingsworth of the Warren Police Department. During the interview, Williams admitted speaking with Walton the morning of April 5, but denied knowing where she might be. In addition, Williams's home was searched, but neither Walton, nor her cell phone, was located at that time.

>After obtaining Walton's phone records, Hollingsworth again interviewed Williams on April 10. At that time, Williams again admitted talking to Walton on the morning of April 5. Williams further conceded that he "might have texted" Walton later that day to ask what she was doing, but he denied having any arguments with her that day.
>
>On April 14, Hollingsworth received notice that Williams and his attorney were at the Monticello Police Department for Williams to make another statement. When Hollingsworth arrived, Williams was on the floor, and Hollingsworth was told that Williams had had a seizure; he was taken to the hospital. While in the emergency room, Williams told Investigator Hollingsworth where Walton's body was located.
>
>The next day, Williams was interviewed once more. At that time, Williams stated that Walton had called him on the morning of April 5 and asked him if he "want[ed] to get together and have sex." Williams said that he texted her "okay" and that he then went to Warren, picked her up, and they returned to his house in Monticello. Williams said that they engaged in "kinky" sex, explaining that Walton wanted to be tied up and "try oxygen deprivation treatment where you put a bag over her head and have sex" in an effort to increase orgasm.
>
>Williams told police that they had sex once already, but that Walton wanted to have sex again. He stated that after they had begun, he went into a seizure and "fell out on her." Williams said that when he awakened, Walton was smothered, and he panicked. He said that he stayed with her for a couple of hours, crying and trying to revive her, but at some point he carried her outside of his house and buried her. He further stated that he had thrown out the necktie used to bind her hands and the bag they had used during sex, and he denied having argued with Walton that day.

*Williams v. State*, 2015 Ark. 316, at 1-3, 468 S.W.3d 776, 777-78. In addition to Mr. Williams's three statements and Investigator Hollingsworth's testimony, the following evidence was also presented at trial:

>The State further presented testimony from Benjamin F. Wright, who was living with Walton's mother and saw Williams at the casino on the evening of April 5. Wright testified that when he asked Williams if Walton had reappeared, Williams told him that he had not seen her. Finally, the State presented the testimony of Dr. Adam Frederick Craig, who performed Walton's autopsy. Dr. Craig testified that Walton had seven recent bruises, including on her throat and the inner side of her upper arm, but no evidence that would indicate her having been bound or tied up. He further determined that Walton had died of asphyxia by undetermined means and that the manner of her death was homicide. When asked

3

>how he arrived at that determination, Dr. Craig stated that the fact that Walton's body had seven different areas of fresh injury was important. He explained that taking those multiple injuries into account, coupled with the fact that there was a death, "means that some kind of probably physical altercation occurred at the time, at or around the time of death."

*Id*. at 9-10, 468 S.W.3d at 781.

The Arkansas Supreme Court affirmed on direct appeal, rejecting Mr. Williams's argument that the trial court erred in denying his motions for directed verdict. *Id*. Mr. Williams then filed a *pro se* petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1, along with several supporting documents, in which he claimed his due-process rights were violated as a result of juror misconduct, prosecutorial misconduct, and an illegal search, and also raised multiple ineffective-assistance-of-counsel claims. (Doc. No. 9-5 at 13-18.) The Drew County Circuit Court denied relief after a hearing. (*Id*. at 170-73.) The Arkansas Supreme Court affirmed on appeal, holding Mr. Williams's claims of trial error were not cognizable in Rule 37 proceedings and he had failed to meet the standard for an ineffective-assistance claim under *Strickland v. Washington*, 466 U.S. 668 (1984). *Williams v. State*, 2019 Ark. 289, 586 S.W.3d 148.

Mr. Williams also filed two *pro se* petitions asking the Arkansas Supreme Court to reinvest jurisdiction in the trial court to consider a petition for writ of error *coram nobis*. (Doc. Nos. 9-9, 9-12.) Both petitions raised claims of prosecutorial misconduct, as well as various claims of trial error and ineffective assistance of counsel. Both were denied. *Williams v. State*, 2017 Ark. 145, 516 S.W.3d 722 (per curiam); *Williams v. State*, 2019 Ark. 173.

In his Petition for Writ of Habeas Corpus,[1] Mr. Williams recites seventeen grounds for

---

[1] Mr. Williams's first habeas petition was dismissed without prejudice for failure to exhaust his remedies in state court. *See Williams v. Kelley*, 5:19CV00215-BRW.

4

relief:

(1) the evidence is insufficient to support the first-degree murder conviction because it does not demonstrate Mr. Williams purposely caused the victim's death;

(2) Mr. Williams's Fourth Amendment rights were violated because the search warrant was facially deficient and lacking in probable cause;

(3) Mr. Williams was falsely arrested and his *Miranda* rights were violated;

(4) Mr. Williams's statement was mischaracterized in the autopsy report, demonstrating prosecutorial misconduct;

(5) an unknown juror had contact with the bailiff and sheriff, who communicated through "body language," and with the prosecutor and trial judge, who answered a factual question in the absence of Mr. Williams and his counsel;

(6) the prosecutor violated a suppression order during the testimony of State's witness Lacey Willet;

(7) the trial judge abused his discretion by communicating with a juror outside of Mr. Williams's presence and by failing to admonish the jury with respect to the suppression order violation;

(8) Mr. Williams's trial counsel was ineffective for failing to raise the illegal search issue;

(9) trial counsel was ineffective for failing to object to the *Miranda* violations;

(10) trial counsel was ineffective for failing to vigorously cross-examine Investigator Hollingsworth regarding the victim's cell phone records;

(11) trial counsel was ineffective for failing to vigorously cross-examine State's witness Jennifer Beaty regarding DNA evidence;

(12) trial counsel was ineffective for failing to vigorously cross-examine the State's witnesses regarding the misrepresentation of Mr. Williams's statement;

(13) Mr. Williams's right to a speedy trial was violated;

(14) trial counsel was ineffective for failing to object to the prosecution's improper and prejudicial comments about Mr. Williams's character;

(15) Mr. Williams's appellate counsel was ineffective for failing to raise various trial errors;

(16) trial counsel was ineffective for presenting contradictory theories in defense; and

(17) appellate counsel was ineffective for failing to raise the prosecution's violation of *Doyle v. Ohio*, 426 U.S. 610 (1976).

(Doc. No. 2 at 5-10, 16-23.) After careful consideration of Mr. Williams's Petition and the Response (Doc. No. 9) and Reply (Doc. No. 10), I recommend relief be denied. The Petition should be dismissed with prejudice.

## II. ANALYSIS

### A. Procedural Default: Claims 2, 3, 4, 5, 6, 7, 9, 13

Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts and exhaust all available state remedies. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State")). The fair-presentment requirement exists so that the respective state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) ("We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'"); *Lenza v. Wyrick*, 665 F.2d 804, 807-08 (8th Cir. 1981). In order to fairly present a federal claim to the state courts, the petitioner must have referred to "'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional

issue' in a claim before the state courts." *Murphy*, 652 F.3d at 849.

When a state inmate fails to comply with the fair-presentment requirement, his or her claim will be procedurally defaulted. *Id*. Moreover, if it would be futile for a petitioner to return to the state courts to present his or her claim, "the exhaustion requirement in § 2254(b) is satisfied, but th[is] failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). When a state prisoner has defaulted his or her federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice," that is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Several of Mr. Williams's claims are procedurally defaulted. Claims 3 (false arrest/*Miranda* violations), 6 (violation of suppression order), 7 (trial judge's abuse of discretion), 9 (ineffective assistance for failure to object to *Miranda* violations) and 13 (speedy trial) were never presented in any state court proceeding. Mr. Williams did present claims 2 (illegal search) and 5 (juror misconduct) in the Rule 37 proceeding; however, the Arkansas Supreme Court did not address the merits of those claims, holding they were claims of trial error not cognizable in Rule 37. *Williams*, 2019 Ark. 289, at 3, 586 S.W.3d at 152. Accordingly, the state court's judgment as to those claims rests on an adequate and independent state ground. *See Coleman*, 501 U.S. at 729-30 ("The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural

7

requirement."). The same is true with respect to claim 4 (prosecutorial misconduct as to the autopsy report), a version of which Mr. Williams raised in his second *coram nobis* petition. (Doc. No. 9-12 at 7.) The Arkansas Supreme Court declined to address the claim on its merits, holding error *coram nobis* cannot be used to raise issues that should have been raised at trial or on direct appeal. *Williams*, 2019 Ark. 173, at 5.

Mr. Williams does not assert there is cause to excuse his procedural default or that he is actually innocent. He only argues his claims are not procedurally defaulted because he "pursued a diligent effort to fairly present his claims in the state court." (Doc. No. 10 at 8.) Additionally, he contends the prosecution "colluded" with his trial counsel to conceal the facts and forfeit the issues. (*Id*.) There is no support in the record for Mr. Williams's conclusory allegations.

Nor can the procedural default of claim 9 be excused under *Martinez v. Ryan*, 566 U.S. 1, 17 (2012), which holds that a lack of counsel or ineffective assistance of counsel in an initial-review collateral proceeding can establish cause for the default of a claim of ineffective assistance of counsel at trial. "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id*. at 14. Mr. Williams's claim 9 is somewhat unclear, but he seems to say his trial counsel should have moved to suppress his final statement to police, which was not voluntarily given and was taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). (Doc. No. 2 at 19.) More particularly, Mr. Williams suggests he was not allowed access to his attorney. (*Id*.) As Respondent points out, the final statement was given in the presence of Mr. Williams's attorney. *Williams*, 2015 Ark. 316, at 8, 468 S.W.3d at 780. Counsel's failure to advance a meritless argument cannot constitute ineffective assistance. *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) (per curiam).

For these reasons, claims 2, 3, 4, 5, 6, 7, 9, and 13 are procedurally defaulted, and federal habeas review is barred.

### B. Merits: Claims 1, 8, 10, 11, 12, 14, 15, 16, 17

Under the Antiterrorism and Effective Death Penalty Act of 1996, and in the interests of finality and federalism, federal habeas courts are restricted to a "limited and deferential review of underlying state court decisions." *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Federal courts may not grant habeas relief on a claim that was adjudicated on the merits in state court unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Under subsection (d)(1), a state court decision is "contrary to" federal law if the state court arrives "at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007). A state court decision involves an "unreasonable application" of federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Under subsection (d)(2), a state court decision is based on an "unreasonable determination of the facts" "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003); *see also* 28 U.S.C. § 2254(e)(1) (a

9

state court's factual finding shall be presumed to be correct, and the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence). Because Mr. Williams's remaining claims were adjudicated on their merits in state court, they are subject to a limited and deferential review pursuant to § 2254(d).

Most of the claims allege ineffective assistance of counsel. Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a claim of ineffective assistance of counsel has two components: (1) that counsel's performance was deficient, resulting in errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense, depriving the defendant of a fair trial. The deficient-performance component requires that a defendant show counsel's representation fell below an objective standard of reasonableness. *Id*. at 687-88. The prejudice component requires that a defendant establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id*. at 687.

Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. A court must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Taking § 2254(d) and *Strickland* together, habeas review of a state court's decision must be "doubly deferential": "We take a 'highly deferential' look at counsel's performance, *Strickland*, [466 U.S. at 689], through the

'deferential lens of § 2254(d),' [*Knowles v.*] *Mirzayance*, [556 U.S. 111, 121, n.2]." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *see also Abernathy v. Hobbs*, 748 F.3d 813, 817 (8th Cir. 2014).

### Claim 1 (Sufficiency of the Evidence)

Mr. Williams contends the evidence presented at trial is insufficient to support his first-degree murder conviction because it does not establish he purposely caused the victim's death. (Doc. No. 2 at 16.)  The Arkansas Supreme Court rejected this argument on direct appeal, noting Mr. Williams had "candidly confessed to placing a bag over Walton's head to deprive her of oxygen" and pointing out that a person is presumed to intend the natural and probable consequences of his actions.  *Williams*, 2015 Ark. 316, at 10, 468 S.W.3d at 781 (citing *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007)).  The court held the jury was entitled to believe the State's account over Mr. Williams's, especially given his efforts to conceal the crime, including his untruthfulness in his initial statements to police, his disposal of the victim's body and the necktie and bag, and his attempt to construct an alibi by sending text messages to her phone at times that he later admitted they were together.  *Id*.

The state court's opinion is not in conflict with federal law.  Under the federal standard for a sufficiency challenge, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id*.  The Arkansas Supreme Court correctly determined it was the jury's role to determine credibility and resolve inconsistent evidence.

*Williams*, 2015 Ark. 316, at 10, 468 S.W.3d at 781 (citing *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001)).   Considering the evidence previously recited, the jury easily could have rejected Mr. Williams's account of an accident and found he purposely caused the victim's death.

Nor is the state court's opinion based on an unreasonable determination of the facts.   Mr. Williams suggests the expert opinion of Dr. Craig as to the victim's cause of death was tainted by a misrepresentation in the autopsy report characterizing the sex between Mr. Williams and the victim as "rough," when Mr. Williams had actually described it as "kinky" and "freaky."   (Doc. No. 2 at 16.)   Given Mr. Williams's admission that he placed a bag over the victim's head in order to deprive her of oxygen, there is no discernable difference.

### Claim 8 (Ineffective Assistance:   Illegal Search)

Mr. Williams contends his trial counsel was ineffective for failing to pursue a motion to suppress the evidence seized upon execution of an invalid search warrant.   (Doc. No. 2 at 19.) He asserts the affidavit included misstatements from police as well as a statement, later recanted, from the bus driver who claimed to have overheard his phone conversation with the victim on the morning of the murder.   (*Id.*)   The Arkansas Supreme Court rejected this argument in the Rule 37 proceeding:   "Because nothing seized from the search was introduced into evidence at the trial, Williams has failed to demonstrate prejudice arising from trial counsel's failure to investigate the search-warrant affidavit."   *Williams*, 2019 Ark. 289, at 5-6, 586 S.W.3d at 154 (citing *McClinton v. State*, 2018 Ark. 116, 542 S.W.3d 859).   As for Mr. Williams's contention that his DNA profile was obtained from materials seized in the purportedly illegal search, a contention he reprises in his Petition, the court noted his DNA profile was actually obtained from an oral swab.   *Id.* at 6, 586 S.W.3d at 154, n.2.

Mr. Williams cannot show the state court's opinion is contrary to clearly established federal

law, nor can he show it was based on an unreasonable determination of the facts. In short, his trial counsel cannot be deemed ineffective for failing to file a motion to suppress evidence that was never introduced.

### Claim 10 (Ineffective Assistance: Cell Phone Records)

Mr. Williams argues his trial counsel was ineffective for failing to "fully and vigorously" cross-examine Investigator Hollingsworth about the victim's cell phone records. (Doc. No. 2 at 20.) According to Mr. Williams, his counsel should have drawn the jury's attention to phone calls the victim had with other individuals on the morning of the murder, which would have helped rebut the State's theory that it was Mr. Williams who had argued with her on the phone that day. (*Id.*) The Arkansas Supreme Court addressed this claim on the merits in the Rule 37 appeal:

> The trial record shows that Butcher testified that the argument she had overheard lasted for at least fifteen minutes, and the AT&T records show that the only lengthy call documented by AT&T during that time frame took place between Walton and Williams. Again, there is no demonstration that drawing the jurors' attention to the additional calls noted in the AT&T records would have given rise to a reasonable probability that the outcome of the trial would have been different. Whether Walton spoke with or even argued with another individual on the day that she died is not material in view of Williams's admission that he caused Walton's death and then buried her.

*Williams*, 2019 Ark. 289, at 6, 586 S.W.3d at 154 (internal citation omitted).

Mr. Williams cannot show this holding was unreasonable as to either the law or the facts. Although the phone records showed the victim received other calls on the day of the murder, they ruled out the possibility that the lengthy argument overheard by the bus driver was with anyone other than Mr. Williams. Trial counsel cannot be considered ineffective for failing to cross-examine a witness in a way that would have been unhelpful to the defense.

### Claim 11 (Ineffective Assistance: DNA Evidence)

Mr. Williams argues his trial counsel was ineffective in his cross-examination of State's

13

witness Jennifer Beaty, who testified regarding DNA evidence collected from the victim's body and the crime scene. (Doc. No. 2 at 20.) Mr. Williams alleges Beaty was allowed to "misrepresent" the test results. (*Id.*) His argument is unclear, but he seems to suggest the presence of his DNA on a pillow cutting indicated nothing more than "casual contact" with the victim during sex, especially because he was excluded as a major contributor to other DNA profiles obtained. (*Id.*, Doc. No. 9-5 at 124.)

Mr. Williams raised this claim in his Rule 37 petition. (Doc. No. 9-5 at 131-32.) The trial court adjudicated it together with his other ineffective-assistance claims, finding trial counsel performed reasonably in attempting to "substantiate" the account Mr. Williams gave in his final statement to police: that he tied up the victim and placed a bag over her head and then passed out during sex, smothering her. (*Id.* at 172-73.) The trial court specifically found there was nothing trial counsel could do to veer from this defensive strategy and there was not a reasonable likelihood of a different outcome had trial counsel performed differently. (*Id.*) Similarly, the Arkansas Supreme Court addressed Mr. Williams's miscellaneous claims of ineffective assistance[2] by noting the jury simply did not believe his account of an accident and holding he had failed to demonstrate prejudice resulting from any of his counsel's alleged errors. *Williams*, 2019 Ark. 289, at 8, 586 S.W.3d at 155.

Mr. Williams cannot show the state courts acted unreasonably in rejecting this claim. The statement he gave to police essentially negated the importance of the DNA evidence, as he admitted causing the victim's death. Accordingly, he cannot show his trial counsel performed deficiently by failing to cross-examine this witness more fully, nor can he show a reasonable

---

[2] As the trial court noted in its order denying Rule 37 relief, "Mr. Williams has shown a proclivity to change his allegations [and] to add to them as time passes." (Doc. No. 9-5 at 172.)

14

likelihood of a different outcome.

### Claim 12 (Ineffective Assistance: Autopsy Report)

Mr. Williams continues to argue his statement to police that he and the victim had been engaged in "kinky" or "freaky" sex was misrepresented in the autopsy report, which described the sex as "rough." (Doc. Nos. 2 at 21, 9-2 at 114.) He maintains his trial counsel should have questioned police as to why they misled the medical examiner and should have questioned Dr. Craig as to how this misrepresentation affected his conclusion that the death was a homicide. (Doc. No. 2 at 21.) The Arkansas Supreme Court adjudicated this claim on the merits in the Rule 37 proceeding:

> Williams also argues that investigators misled Dr. Craig when they informed him that Williams admitted that he and Walton were engaging in rough sex when Walton died. Williams insists that this description of "rough" sex instead of "freaky" sex was the basis for Dr. Craig's conclusion that Walton's death was a homicide. Williams fails to establish a material difference between "rough" and "kinky"—the terms used to characterize his sexual activities with Walton. Dr. Craig testified that his conclusion was based primarily on the number of fresh injuries sustained by Walton at the time of her death. Williams's claims regarding Dr. Craig's opinion and testimony do not demonstrate that counsel's representation was deficient.

*Williams*, 2019 Ark. 289, at 6-7, 586 S.W.3d at 154. Mr. Williams has failed to show any error in this holding. Again, given his admission that he tied up the victim and placed a bag over her head to deprive her of oxygen, there is no distinction between the terms he used and the one that appeared in the autopsy report. Therefore, he cannot demonstrate any error on counsel's part.

### Claim 14 (Ineffective Assistance: Prosecutor's Comments)

Mr. Williams maintains his trial counsel was ineffective for failing to object to the prosecutor's allegedly improper and prejudicial comments attacking his credibility, character, and

conduct.[3]   (Doc. No. 2 at 22.)   The Arkansas Supreme Court addressed the claim as follows:

> Williams contends that trial counsel failed to object to the prosecutor's improper comments made during opening statement and closing argument.  At the first hearing on his petition, Williams described the prosecutor's comments that Williams alleged were improper.  Specifically, Williams contends that the prosecutor improperly told the jury that Walton's cell phone had been destroyed; that the prosecutor misstated the distance in feet between the site of Walton's grave and Williams's home; that the prosecutor implied that Williams's DNA was found under Walton's fingernail; that the prosecutor compared his sexual experiences with Williams's sexual experiences; that Williams was the only person to speak to Walton on the day Walton died; and that the prosecutor told the jury that Williams was a liar.
>
> The rule governing closing arguments mandates that such arguments must be confined to issues raised and evidence introduced during the trial and all reasonable inferences and deductions that can be drawn therefrom.  *Stewart v. State*, 2012 Ark. 444, 2012 WL 5963224.  There is no error when comments made during closing arguments are inferable from testimony at trial.  *Id.*  Furthermore, counsel are permitted to express their opinions to a jury so long as they do not purposely arouse passion and prejudice.  *Jefferson v. State*, 372 Ark. 307, 276 S.W.3d 214 (2008).  Because counsel may choose to refrain from objecting during opening statement and closing argument as a matter of trial strategy, absent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct.  *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006).  Finally, closing remarks that require reversal are rare and require an appeal to the jurors' passions.  *Rohrbach v. State*, 374 Ark. 271, 287 S.W.3d 590 (2008).  There is nothing in the trial record to indicate that the prosecutor's comments during opening statement and closing argument were unreasonable, egregious, and appealed to the jurors' passions. Williams did not establish that his trial counsel was ineffective when he chose not to raise meritless objections during the prosecutor's opening statement and closing argument.  *Howard*, 367 Ark. 18, 238 S.W.3d 24.

*Williams*, 2019 Ark. 289, at 7-8, 586 S.W.3d at 154-55.   Mr. Williams has not shown this decision was contrary to clearly established federal law or based on an unreasonable determination of the facts.   Because the prosecutor's comments were generally inferable from the evidence and not

---

[3] To the extent Mr. Williams attempts to raise a direct claim regarding the propriety of the prosecutor's comments, that claim is procedurally defaulted.  In both the Rule 37 appeal and the second *coram nobis* proceeding, the Arkansas Supreme Court declined to address Mr. Williams's claims of prosecutorial misconduct, finding they were claims of trial error not cognizable in those proceedings.  *Williams*, 2019 Ark. 289, at 3, 586 S.W.3d at 152; *Williams*, 2019 Ark. 173, at 3-4.

obviously intended to arouse passion or prejudice, any objection by trial counsel would have been meritless. Again, counsel's failure to make a meritless objection cannot constitute ineffective assistance. *Rodriguez*, 17 F.3d at 226.

### Claim 15 (Ineffective Assistance on Appeal)

Mr. Williams claims his counsel continued to perform deficiently on appeal by failing to argue all the errors he should have raised at trial. (Doc. No. 2 at 22-23.) The Arkansas Supreme Court found Mr. Williams's claim of ineffective assistance on appeal was conclusory and thus did not warrant Rule 37 relief. *Williams*, 2019 Ark. 289, at 8, 586 S.W.3d at 155. His habeas claim is no less conclusory, as it is essentially a list of all the purported trial errors previously recited, along with an allegation that counsel was laboring under an unexplained conflict of interest. (Doc. No. 2 at 22-23.) *See Wiggins v. Lockhart*, 825 F.2d 1237, 1238 (8th Cir. 1987) (mere conclusory allegations will not suffice to warrant habeas relief). In addition, Mr. Williams impliedly concedes his trial counsel did not preserve these issues for appeal; therefore, arguing them on appeal would have been fruitless. Finally, the Arkansas Supreme Court on direct appeal reviewed the record for prejudicial error and found none. *Williams*, 2015 Ark. 316, at 12, 468 S.W.3d at 782. Mr. Williams cannot demonstrate the state court's rejection of his claim was unreasonable.

### Claim 16 (Ineffective Assistance: Contradictory Defenses)

Mr. Williams alleges his trial counsel was ineffective for presenting to the jury two contradictory theories in support of his defense. (Doc. No. 2 at 23.) According to Mr. Williams, "one was a concession of guilt not authorized and was directly against the directed verdict argument." (*Id.*) Mr. Williams seems to fault his trial counsel for offering the same theory he gave to police – that he placed a bag over the victim's head and passed out on her during sex,

accidentally suffocating her – which was the very basis of the directed-verdict motion. (Doc. No. 9-2 at 25-26.)

In denying Rule 37 relief, the trial court found Mr. Williams's "defensive strategy" was "substantially complete" from the time of his final statement to police, and there was nothing trial counsel could have done to change it. (Doc. No. 9-5 at 172-73.) The trial court further found counsel made reasonable efforts to put forth evidence substantiating the accidental-asphyxiation theory, including evidence of Mr. Williams's history of seizures. (*Id.*) On appeal, the Arkansas Supreme Court concluded the jury simply did not accept Mr. Williams's theory, and his ineffective-assistance claims failed because he could not demonstrate prejudice. *Williams*, 2019 Ark. 289, at 8, 586 S.W.3d at 155. Mr. Williams cannot demonstrate any unreasonableness in this decision. In fact, he cannot establish either prong of the *Strickland* inquiry because his counsel offered only one theory of the case, and it was the theory Mr. Williams himself maintained throughout the case.

### Claim 17 (Ineffective Assistance: *Doyle* Error)

Lastly, Mr. Williams alleges, in a conclusory fashion, that his counsel performed deficiently on appeal because he failed to raise the prosecution's violation of *Doyle*, 426 U.S. 610, which prohibits the use of a defendant's post-arrest silence for impeachment purposes at trial. (Doc. No. 2 at 23.) Mr. Williams raised this claim in his Rule 37 petition. (Doc. No. 9-5 at 133.) As with some of his other claims, the trial court disposed of it together with all the allegations of ineffective assistance, finding Mr. Williams could not demonstrate *Strickland* prejudice given the evidence introduced at trial. (*Id.* at 172-73.) The Arkansas Supreme Court agreed and also rejected as conclusory Mr. Williams's claims of ineffective assistance of counsel on appeal. *Williams*, 2019 Ark. 289, at 8, 586 S.W.3d at 155. Even if Mr. Williams's claim were not

18

conclusory, he would be unable to demonstrate a *Doyle* violation and thus unable to demonstrate any deficiency on his counsel's part for failing to raise it. *Doyle* holds that it would be "fundamentally unfair and a deprivation of due process" to use an arrestee's silence in the wake of *Miranda* warnings – which may be nothing more than the arrestee's exercise of the *Miranda* rights – for the purpose of impeaching an explanation later offered at trial. 426 U.S. at 617-18. Mr. Williams gave three statements to police; there was simply no silence with which to impeach him.

### III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). I find no issue on which Mr. Williams has made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability should issue.

### IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.     Mr. Williams's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 2) be DISMISSED with prejudice.

2.     A certificate of appealability not be issued.

DATED this 28th day of April 2020.

                                                                               _____
                                                                               JOE J. VOLPE
                                                                               UNITED STATES MAGISTRATE JUDGE